# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| TRINA MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-CV-00212-NCC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Trina Morris ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff filed a brief in support of the Complaint (Doc. 21), and Defendant filed a brief in support of the Answer (Doc. 26). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 7).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for SSI and DIB on August 2, 2012 (Tr. 189–89, 190–93). Plaintiff's claims were denied initially (Tr. 131–35). After a hearing, the Administrative Law Judge ("ALJ") found Plaintiff not disabled on March 14, 2014 (Tr. 52–72). After the Appeal's Council denied Plaintiff's request for review, Plaintiff filed a complaint in this Court (Tr. 1–7; 1558–67). On September 6, 2016, the case was remanded for further proceedings (Tr. 1612). On remand, Plaintiff filed a Request for Hearing before an ALJ (Tr. 1674–75). After a hearing,

by decision dated August 14, 2017, the ALJ found Plaintiff not disabled (Tr. 1326–54). The ALJ's decision stands as the final decision of the Commissioner. *See* 20 CFR 404.984(b), (d); 416.1484(b), (d).

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date (Tr. 1332). The ALJ found Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, a history of Hepatitis C, bipolar disorder, an anxiety disorder, major depressive disorder, and a panic disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 1332–33).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[1] with the following limitations (Tr. 1334–35). She can stand or walk 2 hours and can sit up to 6 hours in an 8-hour workday (Tr. 1334). She can lift and carry 20 pounds occasionally and 10 pounds frequently (*Id.*). Plaintiff can occasionally climb stairs, but never climb ladders, ropes, and scaffolds (Tr. 1334–35). She can occasionally balance, stoop, crouch, kneel, and crawl (Tr. 1335). She is limited to simple, routine, repetitive tasks (*Id.*). Plaintiff can tolerate occasional interaction with coworkers and no

---

[1] Sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

interaction with the general public (*Id.*).  She retains the ability to adapt to changes in the workplace on a basic level and accept supervision on a basic level (*Id.*).

The ALJ found Plaintiff unable to perform any past relevant work (Tr. 1343).  The ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including a wire wrapper, semi-conductor assembler, and printed circuit board inspector (Tr. 1343–44).  Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 1344).  Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

# IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff argues that the ALJ did not properly evaluate the Plaintiff's pain complaints (Doc. 21 at 3). Second, Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's treating psychiatrist, Dr. Mirza (*Id.* at 6). For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

## A. Evaluation of Plaintiff's Subjective Complaints of Pain

In evaluating a claimant's subjective complaints,[2] the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001); *see also Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)) ("[T]he ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox*

---

[2] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

*v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the Court finds that the reasons offered by the ALJ in support of his analysis of Plaintiff's subjective complaints of pain,[3] when viewed with the record as a whole, are based on substantial evidence.

The ALJ began with a detailed discussion of Plaintiff's reports of increasing pain in her back and leg, including limitations on her ability to lift, sit, stand, walk, and bend as well as her need to lie down frequently (*see* Tr. 1336).  Plaintiff testified that this pain resulted from a work-related back injury she received in April 2010, which ultimately led to a back surgery and worker's compensation settlement (Tr. 76, 97, 1336).  However, the ALJ expressly found Plaintiff's complaints of pain only partially credible after considering several of the relevant factors, concluding that "the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 1335).

First, the ALJ considered objective medical evidence showing several normal or mild physical examination findings (Tr. 1336–37).  For example, the ALJ discussed mildly abnormal findings on Plaintiff's MRI scans (Tr. 312, 956–57, 1072–73, 1336).  The ALJ also noted that despite some evidence to the contrary, Plaintiff generally exhibited full ranges of motion, full or normal extremity strength, normal gait, and normal sensation on examination (Tr. 1336–37; *see also, e.g.*, 323–24, 468, 995, 1243, 2192, 2202–04, 2249, 2301, 2322, 2345–46).  The ALJ also discussed how, despite showing symptomatic signs after her back surgery, treatment notes demonstrated Plaintiff had stable gait, the ability to bear full weight on each leg, walk on her heels and toes, squat, and climb on and off the examination table without difficulty (Tr. 1336;

---

[3]  As discussed in the next section, Plaintiff does not specifically challenge the ALJ's credibility determination regarding symptoms relating to her alleged mental impairments.  Therefore, the Court's discussion in this section is limited to Plaintiff's alleged symptoms relating to her pain from her physical impairment of degenerative disc disease of the lumbar spine.

*see also*, *e.g.*, 1038–39).  In addition, the ALJ cited records demonstrating Plaintiff generally exhibited only mild to moderate lumbar spine tenderness (Tr. 1337; 1243, 2198, 2217).  The records specifically cited by the ALJ as well as a review of the record as a whole support the ALJ's analysis on these points.  *See Goff*, 421 F.3d at 792–93 (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints).

Second, the ALJ reasonably considered the effectiveness of Plaintiff's medications and treatment measures relating to her pain (Tr. 1337).  For example, the ALJ recognized that Plaintiff underwent a variety of procedures including medial branch blocks, lumbar steroid injections, and radio frequency ablations to treat her pain (Tr. 1337; *see also*, *e.g.*, 1122, 1244, 1302–03, 1319–20 (greater than 80% pain relief after each medial branch block), 2199–2200, 2239 (back pain "improved a great deal" since last injection), 2254 (greater than 80% relief from previous injection), 2310 (good results with injections), 2340).  Despite Plaintiff's reports of decreased efficacy of the injections, the ALJ noted she has not escalated treatment, including additional physical therapy or surgery, nor did her doctors suggest she stop injection treatments (Tr. 1337, 1505–06).  As recently as 2017, Plaintiff's doctor noted that she had "good results" from previous injections and that she requested additional injections (Tr. 2310).  And while Plaintiff reported physical therapy had not provided relief in the past, Plaintiff received some physical therapy in 2010 and early 2011 before her surgery and has not pointed to records demonstrating she unsuccessfully tried physical therapy since then (Tr. 333–450, 2284).  *See Good Buffalo v. Colvin*, No. 2:14-CV-91-JMB, 2015 WL 5568042, at *13 (E.D. Mo. Sept. 22, 2015) (citing *Tate v. Apfel,* 167 F.3d 1191, 1197 (8th Cir.1999) (ALJ can properly consider claimant's failure to pursue more aggressive treatment in evaluating credibility).

Significantly, the ALJ noted that throughout her treatment, Plaintiff generally indicated her pain is tolerable with medications and allows her to complete daily activities (Tr. 1337; *see also*, *e.g.*, 1076–78 ("when present [pain] interferes only with some daily activities . . . continue to increase activity"), 1089 (patient able to participate in exercise program), 1122 (all medicines are helping), 1244, 2188, 2202 (back pain controlled with medication), 2300, 2320, 2340). As recently as 2017, Plaintiff reported her low back pain and right leg pain were controlled with medication and that the medications were helping and "improving daily functioning, physical activities" (Tr. 2300, 2308, 2313, 2318).[4] Indeed, Plaintiff recognized in her brief in support of her complaint that at "most visits," the records indicate that "all medicines are helping, and the pain is tolerable" (Doc. 21 at 5). While the records note Plaintiff cannot function without pain medication (*id.*), Plaintiff's own recognized ability to function with medication, even if in a limited capacity, significantly undercuts her argument that she cannot perform any work including sedentary work. *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("Evidence of effective medication resulting in relief . . . may diminish the

---

[4] The Court notes that during the hearing before the ALJ, Plaintiff inconsistently testified about her pain. She stated that "my medication does help" and clarified when asked by her attorney "I said it does [help]" because it lessens her pain. However, several questions later she then stated "it's not helping me" and said she was going to talk to her doctor about putting her on a higher dosage of pain medications (Doc. 1507).

credibility of a claimant's complaints."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (effectiveness of medication supported ALJ's decision to discredit subjective complaints of pain); *Delmater v. Berryhill*, No. 2:16-CV-70-SPM, 2018 WL 1508868, at *9 (E.D. Mo. Mar. 27, 2018) (same).

Relatedly, the ALJ discussed Plaintiff's self-reported levels of pain, finding she reported no more than moderate back pain or a level 3 out of 10, with 10 being the worst (Tr. 1337; *see also*, *e.g.*, 2182, 2185, 2188, 2197, 2202, 2213, 2318, 2338). Plaintiff argues the ALJ mischaracterizes her testimony, in part because Plaintiff indicated pain in excess of 3 on several occasions (Doc. 21 at 5; *see also*, *e.g.*, Tr. 1304, 1309, 1096, 1103, 1116, 1120, 1129, 1133, 1143). However, the Court finds any such error is harmless, as the ALJ's decision enjoys substantial support in the record as a whole for the reasons discussed throughout this section. *See Pearsall*, 274 F.3d at 1218 ("Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (noting that an error is harmless unless the ALJ would have decided the case differently).

After reviewing this medical evidence, the ALJ concluded that the claimant's treatment history and often normal clinical signs and findings are inconsistent with her reports of disabling back and leg pain (Tr. 1337). An ALJ may determine that subjective complaints of disabling pain are not credible in light of objective medical evidence to the contrary, as the ALJ did here. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

Third, the ALJ discussed other evidence that contradicted Plaintiff's claim that she suffered from totally disabling pain during the entire alleged disability period. For example, the ALJ considered diagnostics that led a worker's compensation medical examiner to conclude in July 2010 that Plaintiff likely exaggerated her subjective complaints (Tr. 1336, 322–25). *See*

*Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (holding ALJ is "entitled to draw conclusions" about a claimant's credibility and discredit complaints of pain based on evaluations demonstrating exaggeration of symptoms). Moreover, the ALJ noted Plaintiff's treating physician released her to return to work in 2010, 2011, and 2012 (Tr. 985, 1013–14, 1019–20, 1021, 1338). *See Toland v. Colvin*, 761 F.3d 931, 936 n.4 (8th Cir. 2014) (citing *Goff*, 421 F.3d at 791) (even part-time work that does not rise to the level of substantial gainful activity may be relevant to an ALJ's analysis). In addition, the ALJ noted in his analysis that while Plaintiff reported her pain subsequently increased over time, Plaintiff testified she received pain relief for several months after her back surgery during the disability period and reported walking up to two miles per day and "feeling very good" (Tr. 986, 1336, 1514). *See Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (subjective complaints properly discounted based on inconsistencies).

Fourth, the ALJ reasonably found that Plaintiff's "ability to engage in and complete" a variety of daily living activities "are inconsistent with total physical disability" (Tr. 1337). The ALJ recognized Plaintiff expressed a variety of limitations and reported needing help from family for shopping and household chores (*Id.*). However, the ALJ also noted Plaintiff reported folding laundry while seated; shopping for toiletries and cleaning supplies; cooking simple meals that did not require her to stand for long periods; completing puzzles; watching television; using her tablet for up to 45 minutes; performing personal care independently; caring for her small dog; performing other household chores with breaks, including washing dishes, vacuuming, dusting, and sweeping; managing finances; and driving short distances with minimal difficulty (Tr. 237–53, 1337, 1340, 1501–02, 1817–31, 2297). The ALJ also noted that a Continuing Disability Investigation ("CDI") revealed Plaintiff applied for and received hunting licenses from 2011 through 2015 (Tr. 1337, 2295). In addition, medical records demonstrate Plaintiff reported

walking and swimming (Tr. 1164, 1181). The ALJ therefore concluded Plaintiff's reported

ability to perform basic activities "suggest[s] her pain is not of such a consistent and continuous

nature that it would preclude all basic work activities" (Tr. 1337). *See*, *e.g.*, *Vance v. Berryhill*,

860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective

complaints and evidence regarding her activities of daily living also raised legitimate concerns

about her credibility"); *Steed*, 524 F.3d at 876 (finding the ALJ did not err in discounting the

plaintiff's credibility where the plaintiff reported she could only stand for 15 minutes, sit for a

limited time, and lift half gallon of milk, but she also reported she could perform housework,

take care of child, cook, and drive); *Delmater*, 2018 WL 1508868, at *10 (finding daily activities

such as cleaning up after a dog, driving a car, preparing simple meals, performing housework,

and using the computer inconsistent with disabling pain and mental symptoms).

     Plaintiff argues the Eighth Circuit has cautioned that a claimant's ability to do limited

daily activities does not indicate a claimant can perform the requirements of full-time work

throughout the working day and week (*See* Doc. 21 at 6). The Court finds no error. Subsequent

to the cases Plaintiff cites, the Eighth Circuit has recognized that its cases "send mixed signals

about the significance of a claimant's daily activities in evaluating claims of disabling

pain." *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009); *compare,*

*e.g.*, *Medhaug v. Astrue*, 578 F.3d 805, 875 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming,

washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective

complaints of disabling pain.") *with Reed v. Barnhart*, 399 F.3d 917, 923–24 (8th Cir. 2005)

(internal quotations omitted) ("[T]his court has repeatedly observed that the ability to do

activities such as light housework and visiting with friends provides little or no support for the

finding that a claimant can perform full-time competitive work."). However, Eighth Circuit

cases generally suggest that where such daily activities are inconsistent with a Plaintiff's subjective complaints, it is proper for the ALJ to consider them in conjunction with other factors affecting the credibility of a Plaintiff's complaints. *See*, *e.g., Halverson*, 600 F.3d at 932–33 (holding that the ALJ properly considered daily activities in conjunction with other inconsistencies in the record when assessing the credibility of Plaintiff's complaints). Even if Plaintiff is limited in performing the activities or needs assistance, it was not unreasonable for the ALJ to consider her ability to perform them along with other relevant factors in assessing the credibility of her allegations of disabling pain. *See Delmater*, 2018 WL 1508868, at *10.

Nonetheless, Plaintiff maintains that the ALJ's decision was improper, suggesting he only addressed Plaintiff's activities of daily living and "fail[ed] to discuss the remainder of the *Polaski* factors" (Doc. 21 at 6). However, Plaintiff's position misstates the law of this Circuit. *See Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."). The ALJ cited specifically to the governing Regulations for evaluating symptoms and then considered a variety of factors beyond Plaintiff's daily activities (Tr. 1335–39). For example, and as discussed above, the ALJ examined the duration and intensity of Plaintiff's pain; the effectiveness of medication; any functional restrictions; and the objective medical evidence. *See Polaski*, 739 F.3d at 1322. The ALJ specifically concluded, "Weighing all relevant factors, the undersigned finds that claimant's subjective complaints do not warrant any additional limitations beyond those established in the [RFC]," which further supports that the ALJ considered all factors even if not explicitly noted (Tr. 1337). For the reasons discussed, the Court finds the ALJ properly considered relevant factors and Regulations in assessing Plaintiff's complaints and

concluding "the record as a whole is inconsistent with total physical disability" (*see* Tr. 1335–37).

Moreover, Plaintiff describes and cites to additional records and testimony indicating that Plaintiff complained of, and received significant treatments for, her pain (Doc. 21 at 4–5). The Court acknowledges there is evidence in the record that Plaintiff reported experiencing significant pain from her degenerative disc disease of the lumbar spine. However, the mere fact that Plaintiff experiences pain does not necessarily mean that she is disabled. *See Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) (quoting *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996)) ("While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability."). As discussed above, the ALJ considered both evidence tending to support Plaintiff's assertion that her pain imposed disabling limitations and evidence tending to undermine that assertion, weighed the evidence, and came to a conclusion that was supported by substantial evidence. The Court may not reweigh that evidence. *See, e.g.*, *Renstrom*, 680 F.3d at 1064; *Delmater*, 2018 WL 1508868, at *10 (court must defer to ALJ's credibility determination when supported by substantial evidence even if there is "significant evidence" in record supporting subjective complaints of pain). *See also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) ("While it is not surprising that, in an administrative record which exceeds 1,500 pages, [plaintiff] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support" the Commissioner's decision); *Igo*, 839 F.3d at 728 ("We may not reverse simply because we would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion"); *Goff*, 421 F.3d at 789 ("If, after reviewing

the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision").

In sum, the Court finds that the ALJ conducted an express credibility determination, considered several of the relevant factors, and gave good reasons for finding Plaintiff's subjective complaints not entirely credible. The Court will therefore defer to that analysis. *See Renstrom*, 680 F.3d at 1065 (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination."); *Marino v. Berryhill*, No. 4:17-CV-2154-SPM, 2018 WL 4383354, at *8 (E.D. Mo. Sept. 14, 2018) (similarly deferring to ALJ).

## B. Opinion of Treating Psychiatrist Naveed J. Mirza, M.D.

Under the applicable social security Regulations,[5] "[a] treating physician's opinion is given controlling weight or great weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue,* 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (opinion normally entitled to great weight). However, "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." *Halverson,* 600 F.3d at 929–30 (internal quotation marks omitted); *see also Thomas*,

---

[5]  For claims filed on or after March 27, 2017, the Regulations have been amended to eliminate the treating physician rule. The new Regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c. Plaintiff filed her claim in 2012, so the previous Regulations apply.

881 F.3d at 675 (Commissioner may assign "little weight" when treating physician's opinion is "internally inconsistent"). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Martise v. Astrue,* 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue,* 501 F.3d 987, 990 (8th Cir. 2007)). If a treating physician's opinion is not given controlling weight, the amount of weight given to it "is to be governed by a number of factors [contained in 20 C.F.R. §§ 404.1527(c) & 416.927(c)] including the examining relationship, the treatment relationship, consistency, specialization, and other factors." *Shontos v. Barnhart,* 328 F.3d 418, 426 (8th Cir. 2003) (citations omitted). In weighing a treating source opinion, it is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's finding in that regard should not be disturbed so long as it falls within the "available zone of choice." *E.g., Hacker v. Barnhart,* 459 F.3d 934, 936–38 (8th Cir. 2006); *Tripp v. Colvin*, No. 2:14-CV-80-SPM, 2015 WL 3645026, at *5 (E.D. Mo. June 10, 2015). Here, the ALJ gave good reasons for discounting Dr. Mirza's opinion and assigning it limited weight. Those reasons were supported by substantial evidence and place the ALJ's decision within the available zone of choice.

First, the ALJ discussed how Dr. Mirza's opinions expressed in a treating source statement form were internally inconsistent (Tr. 1342). Noting the length, nature, and extent of Dr. Mirza's treatment of Plaintiff, the ALJ discussed in detail the Treating Medical Source Statement ("MSS") that Dr. Mirza completed on February 26, 2014 (Tr. 1264–68, 1339, 1342). For example and relevant to Plaintiff's argument, the ALJ noted Dr. Mirza checked that Plaintiff had "marked" impairments in specific areas such as interacting with supervisors, maintaining attention/concentration, and behaving in an emotionally stable manner (Tr. 1266–67, 1342). However, Dr. Mirza checked that Plaintiff had only "moderate" limitations in domains such as

maintaining functioning; concentrating, persistence, pace, and completing tasks; and decompensation in work or work-like settings which would cause the individual to withdraw or would exacerbate symptoms (Tr. 1268, 1342). Therefore, the ALJ concluded Dr. Mirza's opinion was somewhat internally inconsistent (Tr. 1342). Even if the Court were to accept Plaintiff's argument that Dr. Mirza's opinion is not internally inconsistent because of differences between the SSA's definitions and the definitions used in the MSS (Doc. 21 at 7), the Court finds the ALJ's analysis of Dr. Mirza's opinion was supported for the reasons discussed below. *See also Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (holding that checkmarks on a Medical Source Statement are conclusory opinions which can be discounted if contradicted by other objective medical evidence); *Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012) (quoting *Wildman,* 596 F.3d at 964) ("[W]e have recognized that a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration'"); *Tripp*, 2015 WL 3645026, at *6 (ALJ permissibly reduced weight given to treating psychiatrist's MSS where, as here, physician left multiple portions blank with no elaboration).

Second, the ALJ properly found Dr. Mirza's opinions were inconsistent with the observations of other treating providers and examining doctors (Tr. 1340, 1342). While the ALJ recognized consistencies between Dr. Mirza's notes and the notes of a therapist who briefly treated Plaintiff, the ALJ noted other medical providers, including her pain management provider who Plaintiff visited every month for several years, did not report observing abnormal behavior or distractibility during their examinations (Tr. 1342; *see also*, *e.g.*, 322–25, 463–65, 1241–44, 2183, 2186, 2189–90, 2202–04, 2237, 2305–06, 2309, 2316, 2323). In fact, treating providers often note she has normal social and family relationships and an okay to pleasant mood (*see id.*).

Thus, the ALJ reasonably relied on the lack of observed significant mental health symptoms or limitations by these other providers in making his decision. *See*, *e.g.*, *Delmater*, 2018 WL 1508868, at *7 (ALJ properly found psychiatrist's opinions inconsistent with other providers who noted, for example, generally cooperative attitude, normal speech, and normal attention despite also recognizing Plaintiff's depression and anxiety); *Zeier v. Colvin*, No. 4:15-CV-00156-RWS-SPM, 2016 WL 1068995, at *7 (E.D. Mo. Feb. 26, 2016), *report and recommendation adopted*, No. 4:15-CV-156 RWS, 2016 WL 1060371 (E.D. Mo. Mar. 17, 2016) (ALJ properly gave treating psychiatrist's opinions concerning extreme mental limitations little weight when they conflicted with other treating physician's records noting relatively stable mood).

In addition, Dr. Mirza's own records demonstrate some inconsistencies with his MSS. For example, Dr. Mirza's review of systems ("ROS") regularly demonstrated mild to moderate symptoms that are inconsistent with his suggested limitations or total disability (*see*, *e.g.*, Tr. 1029, 1151–52, 1162–63, 1167–68, 1226–27, 1276, 1917–18, 2066–67, 2075–76). Dr. Mirza also often noted Plaintiff's diagnosis was mild and remained unchanged or did not deteriorate (*see*, *e.g.*, Tr. 1169, 1217–18, 1280, 1339, 2072, 2089). *See Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-0035-LRR, 2018 WL 4516002, at *8 n.13 (N.D. Iowa June 28, 2018) (records demonstrating the plaintiff was stable support the ALJ's decision to not give great weight to the medical opinions). Moreover, the ALJ noted that mental status examinations consistently revealed that, although Plaintiff demonstrated an abnormal mood and affect, poor insight, and demoralized thoughts or low self-esteem, she was generally cooperative with fair to good eye contact, normal psychomotor activity, and normal speech (Tr. 1339; *see also*, *e.g.*, 1032, 1152, 1165, 1181, 1290, 1913–14, 2066–69, 2075–76, 2080, 2133). The ALJ's finding that the mental

status examinations contained in Dr. Mirza's treatment records were inconsistent with the limitations set forth in his MSS was a permissible reason to give his MSS less weight. *See Halverson*, 600 F.3d at 930 (ALJ appropriately discounted treating doctor's limitations when they were inconsistent with the plaintiff's mental status examinations or record as a whole); *Davidson,* 578 F.3d at 843 ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes"); *Vorwerk v. Berryhill*, No. 4:17-CV-2417-SPM, 2018 WL 4358777, at *5–6 (E.D. Mo. Sept. 13, 2018) (finding treating psychiatrist's mental limitations inconsistent with observations such as normal language and absence of abnormal or psychotic thought process); *Tripp*, 2015 WL 3645026, at *5 (ALJ appropriately discounted treating psychiatrist's MSS limitations when inconsistent with mental status findings demonstrating, for example, that the plaintiff was generally alert and oriented, cooperative, and made good eye contact).

Third, the ALJ appropriately discounted Dr. Mirza's opinion based on the inconsistency with Plaintiff's own reports that her symptoms were only moderately limiting (Tr. 1340, 1342). For example, Plaintiff reported her medications were helping and that she had minimal or no distractibility (Tr. 2066, 2075–78; *see also*, *e.g.*, 1029, 1151–52, 1162–63, 1167–68, 1226–27). *See Delmater*, 2018 WL 1508868, at *7 (inconsistencies between treating psychiatrist's opinion and Plaintiff's self-reports constituted substantial evidence supporting ALJ's decision to discount physician's opinion). While Plaintiff argues her documented "poor insight" would explain inconsistencies, Plaintiff offers no medical evidence to support this argument (Doc. 21 at 8). *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) ("If substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence and even if we may have reached a different outcome.").

Fourth, the ALJ found Dr. Mirza's marked and extreme limitations inconsistent with Plaintiff's activities of daily living, including her ability to shop at smaller stores, perform household chores, and drive short distances (Tr. 1342–43). As discussed in the previous section, the ALJ made an appropriate determination regarding such activities. Moreover, while Plaintiff points to records supporting limitations on Plaintiff's activities due to her mental symptoms, Plaintiff did not specifically raise the ALJ's evaluation of Plaintiff's complaints relating to her mental impairments as an issue for this Court's consideration (*see* Doc. 21). Regardless, the Court finds the ALJ's decision to give limited weight to Dr. Mirza's opinions was also supported by the ALJ's credibility analysis. *See Wildman*, 596 F.3d at 969 (credibility determination influences RFC); *Tripp*, 2015 WL 3645026, at *7 (credibility determination supported ALJ's decision to give little weight to treating psychiatrist's limitations).

The ALJ included a separate, detailed evaluation of Plaintiff's reported symptoms resulting from her mental impairments (Tr. 1339). For example, the ALJ found the relatively consistent mental status examinations and Plaintiff's reports that her symptoms occasionally improved with treatment indicated her symptoms remained stable and did not deteriorate. (Tr. 1167, 1179, 1186, 1339–40, 2066, 2075). Furthermore, the ALJ also found Plaintiff complained of increased symptoms related to situational or financial stressors, including conflict with her immediate family and within her home (*see*, *e.g.*, Tr. 1162 (caring for dying mother), 1339, 2079, 2121 (conflict with son), 2126 ("family situation has been overwhelming her lately"), 2142 ("still fights with her kids," and "she discuss [sic] in this session her family dynamic that has impacted her functioning"), 2153 (conflict with son and daughter's best friend), 2160 (conflict with son)). *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (situational depression not disabling); *Williams v. Colvin*, No. 2:15-CV-29-RLW, 2016 WL 3971377, at *7

(E.D. Mo. July 25, 2016) (impairments exacerbated by situational stressors such as "family conflicts" not disabling); *Budo v. Astrue*, No. 4:12-CV-187-JAR-TIA, 2013 WL 1183364, at *23 (E.D. Mo. Mar. 5, 2013) (situational depression due to "family situations" not disabling); *Rayford v. Astrue*, No. 4:09-CV-1842-MLM, 2011 WL 720068, at *19 (E.D. Mo. Feb. 22, 2011) (finding plaintiff's psychiatric conditions were mainly environmental because they were based on family problems and holding such situational conditions cannot be considered disabling). In making his credibility determination, the ALJ also relied on the lack of symptomatic reports from Plaintiff's other providers; Plaintiff's work history during the disability period; Plaintiff's report to CDI investigators that she never had emotional outbursts at work and would enjoy working as a cashier because she would like interacting with customers; and Plaintiff's reports of additional daily activities inconsistent with the severity of her subjective psychological complaints (Tr. 1340–41, 2297). *See Bernard v. Colvin,* 774 F.3d 482, 489 (8th Cir. 2014) (quoting *Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir. 2001)) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'"); *Petty v. Colvin*, No. 4:13CV00172 JTK, 2014 WL 3734570, at *3 (E.D. Ark. July 28, 2014) (ALJ may discount a treating physician's opinion when it is inconsistent with a plaintiff's activities of daily living). The ALJ's evaluation of Plaintiff's subjective complaints relating to her mental impairments was essential to the weighing of Dr. Mirza's opinion. *See Wildman*, 596 F.3d at 969.

Fifth, the ALJ also reasonably considered and gave weight to evidence from two other experts who expressed opinions inconsistent with Dr. Mirza's opinion, finding those opinions to be supported by the record (Tr. 1341). In 2012, Scott Brandhorst, Psy.D., a state agency psychological consultant, reviewed the record and found that while some limitations were

supported, Plaintiff demonstrated the ability to perform simple repetitive tasks on a sustained basis (Tr. 111–13).  Moreover, James Morgan, Ph.D., provided a state agency psychological opinion and concluded Plaintiff could perform simple, repetitive tasks on a sustained basis away from the public (Tr. 1341).  The ALJ reasonably gave significant weight to these portions of their opinions, finding them consistent with Plaintiff's activities of daily living and clinical signs and findings, discussed above (Tr. 1341).  *See* 20 C.F.R. §§ 404.1513a(b)(1); 416.913a(b)(1) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (State agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments).

Sixth, the ALJ also properly discounted Dr. Mirza's opinions specifically relating to absenteeism and the ultimate issue of disability.  Dr. Mirza's treatment notes do not appear to provide any support for his opinion that Plaintiff could not maintain regular attendance.  As the ALJ noted and Plaintiff does not contest, there is no evidence that Plaintiff was frequently late to, or failed to show up for, her appointments with Dr. Mirza or other providers (Tr. 1342).  *See Davidson*, 578 F.3d at 842 (ALJ may discount a treating physician's opinion if it is not supported by the doctor's own treatment records); *Vorwerk*, at *5–6 (lack of documented history of absenteeism supported ALJ's decision to discredit treating physician's opinions regarding attendance and punctuality).  The ALJ also appropriately discredited Dr. Mirza's initial opinion, after just one intake interview with Plaintiff, that she was "unable to hold a job" (Tr. 1028–34, 1342).  *See House v. Astrue,* 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."); *Ellis*

*v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work' . . . involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."); *Zeier*, 2016 WL 1068995, at *9 (statement that Plaintiff cannot work not entitled to deference).

The Court also notes that despite giving Dr. Mirza's opinion less than controlling weight, the ALJ did incorporate some of Dr. Mirza's limitations into the RFC. For example, Dr. Mirza opined in his MSS that Plaintiff had extreme limitations in relating to coworkers and dealing with the public (Tr. 1266). Such restrictions are reflected in the ALJ's RFC, which limited Plaintiff to only occasional interaction with coworkers and no interaction with the general public (Tr. 1335).

Finally, although the ALJ did not explicitly discuss all of the factors listed in §§ 404.1527(c) and 416.927(c) in evaluating Dr. Mirza's opinion, contrary to Plaintiff's contention, he was not required to do so. *See Vorwerk*, 2018 WL 4358777, at *5–6 (ALJ not required to discuss each factor); *Tripp*, 2015 WL 3645026, at *7 (quoting *Nishke v. Astrue*, 878 F. Supp. 2d 958, 984 (E.D. Mo. 2012)) ("ALJ's failure to perform a factor-by-factor analysis of the 20 C.F.R. §§ 404.1527(c) and 416.927(c) factors was not erroneous when the ALJ 'explained his rationale in a manner that allowed the [Court] to follow his line of reasoning'"); *Derda v. Astrue*, No. 4:09-CV-01847-AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011) (collecting nationwide cases) ("While an ALJ must consider all of the factors set forth in 20 C.F.R. § 404.1527[], he need not explicitly address each of the factors"). Here, the ALJ cited 20 C.F.R. §§ 404.1527 and 416.927 in concluding that Dr. Mirza's opinion was not entitled to controlling weight and discussed several of the factors in his decision (Tr. 1339, 1342–43). For example, the ALJ noted or otherwise discussed the examining and treatment relationship; the

length, nature and extent of the relationship; supportability; consistency; specialization; and other factors (*see id.*).  The ALJ also "explained his rationale in a manner that allows the [Court] to follow his line of reasoning." *Nishke*, 878 F. Supp. 2d at 984.  No more was required to comply with the relevant Regulations.

For all of the above reasons, the Court finds that the ALJ did not err in his assessment of Dr. Mirza's opinion.  The ALJ's decision demonstrates that he considered all of the relevant evidence in assessing Dr. Mirza's opinion, and it is not the role of this Court to reweigh that evidence.  Although the record could also support a different conclusion, the ALJ's finding was supported by substantial evidence.  Therefore, the ALJ's assessment of Dr. Mirza's opinion fell within the "zone of choice," and the Court will defer to that decision.  *See Hacker*, 459 F.3d at 937–38; *Marino*, 2018 WL 4383354, at *6.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 12th day of March, 2019.

  /s/ Noelle C. Collins  
NOELLE C. COLLINS  
UNITED STATES MAGISTRATE JUDGE